UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERNESTINE B.,

                Plaintiff,

   -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

22-CV-06154-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12)

Plaintiff Ernestine B.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is denied, and defendant's motion (Dkt. No. 11) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB on December 21, 2017, with an alleged onset date of January 9, 2017. (Administrative Transcript ["Tr."] 187-90).  The claim was initially denied on April 23, 2018.  (Tr. 83-102).  Plaintiff filed a timely request for an administrative hearing before an administrative law judge ("ALJ").  (Tr. 106-22).  On October 8, 2020, a telephone hearing was held by ALJ Andrew J. Soltes, Jr., during which Plaintiff participated, with counsel.  (Tr. 29-82).  A vocational expert ("VE") also testified at the hearing.  The ALJ issued an unfavorable decision on December 1, 2020.  (Tr. 10-28).  The Appeals Council denied Plaintiff's request for review on February 9, 2022.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the

Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).[3]  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education,

---

[3] On January 18, 2017, the defendant published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules are effective as of March 27, 2017, and apply to this claim, filed by Plaintiff on December 21, 2017.

and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

Preliminarily, the ALJ determined Plaintiff's last-insured date to be September 30, 2022. (Tr. 15). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 9, 2017, the alleged onset date. (Tr. 15). At step two, the ALJ found that Plaintiff has the following severe impairments: scoliosis; bipolar disorder; generalized anxiety disorder; mood disorder; and posttraumatic stress disorder. (Tr. 16). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-19).

Prior to proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work, except she:

• can occasionally stoop, kneel, crouch, and crawl;

• is limited to performing low stress occupations, which are defined as those consisting of simple, routine tasks and entailing no more than basic work-related decisions;

• can occasionally interact with supervisors and coworkers, but can never interact with the public; and

• can rarely tolerate changes in the workplace setting.

(Tr.19-23).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (Tr. 23).  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 23-24).  Therefore, the ALJ found that Plaintiff is not disabled.  (Tr. 24).

IV.    *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because: (1) although the ALJ found the medical opinion of consultative examiner Dr. Christine Ransom, Ph.D., to be "generally persuasive," he failed to provide adequate explanation as to why he rejected other portions of Dr. Ransom's opinion; and (2) the ALJ failed to explain why he found that Plaintiff could occasionally interact co-workers and supervisors, but never with the public.  The Court finds these arguments unpersuasive.

As a threshold matter, Plaintiff's challenge to the ALJ's consideration of her RFC is a narrow one: she contends that the RFC finding that she could occasionally interact with coworkers and supervisors is not supported by substantial evidence.  However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's viewing of the persuasiveness of the evidence or to argue that the evidence in the record could support her position; she must show that no reasonable

- 7 -

factfinder could have reached the ALJ's conclusions on this record. *See Brault*, 683 F.3d at 448; *see also Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision" (citations omitted)); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("On an appeal such as this, we are faced with a simple reality which appellants often overlook, namely, that factual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence"). Plaintiff cannot sidestep the substantial evidence standard of review by characterizing her disagreement with the ALJ's reasonable consideration of the evidence as an issue of legal error. *See Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013). Indeed, the Supreme Court held that courts should "defer[] to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1151. It reiterated that an ALJ's findings "are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Id.* at 1152 (citing 42 U.S.C. § 405(g)). The "threshold for such evidentiary sufficiency is not high." *Id.* at 1154. "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotations omitted).

In any event, the ALJ's RFC finding generally, and his finding that Plaintiff could occasionally interact with coworkers and supervisors but never interact with the public specifically, is supported by substantial evidence.

First, the ALJ considered Plaintiff's treatment notes, including her counseling records, which support his RFC finding. (Tr. 16-21). The ALJ noted Plaintiff's reported

difficulties tolerating external stressors and raising her children without support, her reported emotional lability, and her conflicts with others. (Tr. 20-21, *citing* Tr. 355-56, 581, 783). Consistent with some of Plaintiff's reported difficulties, the ALJ acknowledged that Plaintiff exhibited mood and affect fluctuations – such as irritable or anxious mood and affect – during counseling. (Tr. 20-21, *see, e.g.*, Tr. 365, 369, 373, 377, 381, 385, 389 ("left the session in a lighter mood"), 397, 413, 685 ("leaving in a lighter mood"), 874). However, the ALJ noted that Plaintiff's counselors also regularly observed that Plaintiff had normal (euthymic) mood and affect. (Tr. 20-21, *see, e.g.*, Tr. 361, 393, 417, 588, 592, 595, 617, 624, 631, 653, 657 ("doing better" since starting medications), 699, 703, 739, 779, 803, 807). As the ALJ further highlighted (Tr. 20-21), Plaintiff's counselors otherwise consistently observed normal mental status findings, including Plaintiff's normal appearance, appearance, motor activity. (*See, e.g.*, Tr. 361, 365, 369, 373, 377, 381, 385, 389, 393, 397, 405, 413, 417, 421, 588, 616, 623-24, 637, 657, 874). Plaintiff also consistently exhibited normal thought patterns and content, coherency, intact sensorium, and no hallucinations.  (Tr. 361, 365, 369 (but mild confusion due to external stressors), 373 (same), 377 (same), 381, 385-86, 389-90, 393-94, 397-98, 405, 413, 417, 421, 588, 592-93, 595-96, 616-17, 623-24, 637, 657-58, 703-04, 874). Plaintiff's counselors also repeatedly documented that Plaintiff had normal memory, perception, cognition, concentration and attention, and fund of knowledge. (*See, e.g.*, Tr. 362, 365-66, 369-70, 373-74, 377-78, 381-82, 385-86, 389-90, 393-94, 397-98, 405-06, 413-14, 417-18, 421-22, 588-89, 592-93, 595-96, 616-17, 623-24, 637, 657-58, 703-04, 874). Likewise, Plaintiff demonstrated fair insight and judgment, also on a consistent basis. (*See, e.g.*, Tr. 361, 366, 370, 374, 378, 382, 386, 390, 394, 397-98, 406, 414, 418, 422, 589, 593, 596,

617, 624, 637, 658, 704, 874). *See Andrews v. Comm'r of Soc. Sec.*, No. 16-CIV-6867-KMK-JCM, 2017 WL 6398716, at *12 (S.D.N.Y. Oct. 24, 2017) (normal mental-status examinations supported that the claimant could perform simple, unskilled work), report and recommendation adopted, No. 16-CV-6867- KMK-JCM, 2017 WL 6398727 (S.D.N.Y. Dec. 13, 2017).

As the ALJ also observed (Tr. 21), while Plaintiff attended therapy weekly for some time, her attendance became inconsistent in March 2019, she did not attend any therapy between March and May 2019, and she did not reengage in counseling for one-year after her counselor left the practice. (*See, e.g.*, Tr. 276-99, 296-303, 333-35, 873-86). Yet, Plaintiff's mental status examinations reflected functioning within normal limits during this time, other than intermittent mood and affect fluctuations and fair insight and judgment. (Tr. 21, *citing*, Tr. 782-85, 786-09).

Similarly, Plaintiff's mental status examinations were benign despite refusing or unilaterally discontinuing psychotropic medications against the strong urgings of LMHC Shanelle Slade. (*See, e.g.*, Tr. 425, 429-31, 433-34, 441-43 ("Therapist will continue to encourage and recommend client to engage in psychiatric evaluation as client continues to remain symptomatic."), 459 ("continues to opt out of medication management" despite continued verbal altercations), 592-94, 602-05, 775 ("Client is unsure at this time if she is going to continue to pursue psychiatric medications" despite increased symptoms and stressors)). Likewise, despite Plaintiff's consistent refusal to attend group and/or anger management therapy despite her counselor's continual urging, Plaintiff's mental status examinations remained benign, and she nonetheless reported improved emotional regulation and coping skills, decreased aggression, and fewer altercations. (*See, e.g.*, Tr.

385, 425, 445, 871, 616.6).  Plaintiff also regularly denied safety concerns (*see, e.g.*, Tr.

361, 369, 385, 409, 413, 433, 459, 588, 595, 616) and violent ideations (*see, e.g.*, Tr.

361, 365, 369, 373, 382, 386, 390, 394, 398, 406, 414, 418, 422, 589, 593, 596, 617, 624,

637, 704). She likewise reported success in staying away from people who she deemed

to be emotionally triggering. (*See, e.g.*, Tr. 385, 588, 595, 602, 623).

To that end, despite inconsistent counseling, lack of medication, or refusal to

attend anger management treatment and/or group therapy, and providing further support

for the RFC, the record reflects that Plaintiff learned coping and problem-solving skills,

improved her frustration tolerance, gained insight, and was able to avoid altercations

throughout the course of therapy. (*See, e.g.*, Tr. 385 ("remains insightful"), 389, 397

("Client shared progress, reporting that she did not negatively react and was able to

rationalize and process things before reacting."), 441 ("Therapist praised client for

effective problem solving without incident"), 588 ("remains insightful regarding setting

limits and staying away from her triggers including her sister. Therapist praised client for

progress towards goals and objectives."), 592 (pleasant mood, reduced arguments

decreased aggression), 595, 602, 623, 771 ("Client reports that she has been able to set

healthy limits with her supports and finds that this has in return decreased her level of

frustration when she is home.")).

In support of the RFC, the ALJ also considered the prior administrative medical

finding from State agency psychological consultant, Dr. Haus, which the ALJ found to be

persuasive, and the medical opinion from Dr. Ransom, which the ALJ found to be

generally persuasive. (Tr. 22-23, *citing* Tr. 92-93, 464-67). The ALJ's RFC derives

substantial support from these opinions. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x

108, 109 (2d Cir. 2020) (finding the ALJ's decision relied on substantial evidence where the ALJ relied on consultative examinations and the findings of a State agency consultant, as well as evidence of the claimant's treatment, which did not show that the claimant had any limitations beyond those outlined in the RFC).

Specifically, following the April 2018 comprehensive review of Plaintiff's record, Dr. Haus assessed that Plaintiff remained capable of performing simple work that did not require more than occasional contact with others, which the ALJ found to be persuasive. (Tr. 22-23, *citing* Tr. 92-93). Considering the supportability of the finding, the ALJ noted that Dr. Haus did not examine Plaintiff, but his finding was based on a review of the record. (Tr. 22-23. *See* 20 C.F.R. § 404.1527c(c)(1) (supportability)). The ALJ also considered the consistency of the finding, concluding that it was largely consistent with the record pertaining to Plaintiff's mental health impairments. (Tr. 23. *See* 20 C.F.R. § 404.1527c(c)(2)). While the ALJ's RFC certainly reflects greater limitations in some respects as supported by the record, the consultant's finding provides ample additional support for the ALJ's RFC determination. *Cf., Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (upholding an RFC finding where "the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* [the claimant's] RFC based on other evidence in the record") (emphasis in original)); *Threatt v. Comm'r of Soc. Sec.*, No. 19-CV-25JJM, 2020 WL 4390695, at *5 (W.D.N.Y. July 31, 2020).

In further support of the RFC finding, the ALJ found Dr. Ransom's opinion that Plaintiff had no more than moderate limitations generally persuasive. (Tr. 22. *See, e.g., Grega v. Saul*, 816 F.App'x 580, 582–83 (2d Cir. 2020) (the opinion of a consultative examiner may constitute substantial evidence in support of an ALJ's decision) (citing

- 12 -

*Mongeur v. Heckler*, 722 F.2d 1033,1039 (2d Cir. 1983)). Per Dr. Ransom, Plaintiff had moderate limitations in understanding, remembering, and applying simple and complex directions and instructions using reason and judgment to make work-related decisions, interacting adequately with supervisors, coworkers, and the public, sustaining concentration to perform tasks at a consistent pace, sustaining an ordinary routine and regular attendance at work, regulating her emotions, controlling her behavior, maintaining her well-being, and being aware of normal hazards and taking precautions, which would significantly interfere with Plaintiff's daily functioning. (Tr.22, *see* Tr. 466-47).

While conceding that the opinion was based on a single examination, the ALJ noted the opinion was supported by Dr. Ransom's clinical observations during this examination. (Tr. 22, *referring to* Tr. 465-67). As the ALJ had discussed (Tr. 20-21), Dr. Ransom's opinion was largely unremarkable, other than moderate limitations in attention, concentration, and memory attributed to mood disturbance and low-average cognitive functioning. (Tr.466-67). Plaintiff was cooperative with Dr. Ransom and behaved in a socially appropriate manner. (Tr. 465). She had normal appearance, motor behavior, and eye contact, and was well-spoken. *Id.* Plaintiff also exhibited goal-directed thought processes, had clear sensorium, full orientation, appropriate general fund of information, and good insight and judgment. (Tr. 466-67). The ALJ also found the opinion to be largely consistent with the medical evidence. (Tr. 22). However, the ALJ found that Dr. Ransom's opinion that Plaintiff's impairments would significantly interfere with daily life was vague, and found Dr. Ransom's opinion speaking to Plaintiff's functional abilities more useful and reliable. *Id.* *See Veino vBarnhart*, 312 F.3d 578, 588 (2dCir. 2002)(an ALJ may reject portions of an opinion while accepting others).[7]

- 13 -

The RFC also derives support from Plaintiff's reported daily activities which evince functional limitations consistent with the ability to perform simple, low-stress work, involving no interaction with the public but occasional interaction with supervisors and coworkers. (Tr. 19). Specifically, as the ALJ had considered (Tr. 15-18), Plaintiff was capable of driving, doing chores with her children, and acting as the sole caregiver to her children, with whom she lived alone. (Tr. 39-40, 50, 64-65). Plaintiff also testified that she regularly ran errands, went shopping with her sister, and visited friends. (Tr. 51, 64-65). She denied having any difficulty completing personal hygiene tasks. (Tr. 64, 466). Plaintiff also was able to visit Virginia as a means to coping with the stress of her fiancé's incarceration, and had planned to go back with her children to visit family. (Tr. 767). Thus, the ALJ properly considered Plaintiff's activities as one of many factors contributing to his conclusion Plaintiff was capable of functioning at a higher level than she alleged. *See Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 53 (2d Cir. 2016) (finding ALJ properly discredited Cohen's testimony based on record evidence of her activities of daily living, including going out with friends and using public transportation to get to her doctor appointments); *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (admitted activities of daily living supported ALJ's determination); *Wolfe v. Comm'r of Soc. Sec.*, 272 F. App'x 21, 22 (2d Cir. 2008) (same); *see also Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) ("[S]ubstantial evidence of routine activities" properly found to be inconsistent with claims of total disability).

Additionally, as the ALJ observed (Tr. 15-17), Plaintiff worked during the relevant period, in occupations that undermined her allegations, and provide significant support to the RFC. Specifically, Plaintiff testified that she worked at McDonald's from July through September 2020, as a greeter and cleaner, during which she was also being trained to work at the drive-thru window. (Tr. 40-41, 222; *see also* Tr. 877, 880 (Plaintiff's reports to her counselor that she was working at McDonald's)). She denied having any difficulties interacting with customers and denied any altercations with managers or coworkers. (Tr. 54-56, 65-66 ("I thought we was just getting along just swell, honestly."), 67-68 ("No, I didn't have any difficulties talk to [the customers.]")). The position ended because she stopped coming to work, though she continued to apply to work at different McDonald's locations that were closer to her home. (Tr. 42, 222). Plaintiff also was in training to work at a call center from 2019 through 2020; this position ended due to COVID-related closures and because she did not have a GED and thus was not qualified for the job. (Tr. 44-45). *See Downs v. Colvin*, No. 6:15-CV-06644(MAT), 2016 WL 5348755, at *3 (W.D.N.Y. Sept. 26, 2016) (ALJ properly considered that plaintiff's "part-time work, even if not substantial gainful activity, may show a claimant is able to do more than they actually did").

In sum, when taken altogether, the assessments from Drs. Haus and Ransom, along with benign mental status examinations, treatment records documenting improvements with therapy and medication, and Plaintiff's demonstrated ability to interact with coworkers and supervisors during her work at McDonald's and at a call-center, provide substantial evidence to support for the ALJ's ultimate determination that Plaintiff's impairments were not totally disabling in nature. *Cook*, 818 F. App'x at 109; *see also Janis*

*H. v. Comm'r of Soc. Sec.*, No. 20-CV-1749SR, 2022 WL 2193473, at *4 (W.D.N.Y. June 17, 2022) (citing *Robin P. v. Comm'r of Soc. Sec'y*, 2022 WL 593612, at *10 (N.D.N.Y. Feb. 28, 2022) (ALJ's assessment of plaintiff's mental limitations supported by substantial evidence where ALJ "cited the contrary evidence, but also pointed towards treatment records, [p]laintiff's reports of her own daily activities, and expert opinion that supported a finding of fewer limitations than [p]laintiff claimed")).

Plaintiff asserts that by finding that she could occasionally interact with supervisors and coworkers, but never with the public, the ALJ arbitrarily created such a distinction. However, neither of the doctors' assessments found Plaintiff could never interact with coworkers and supervisors. Rather, Dr. Ransom opined that Plaintiff would have moderate limitations interacting adequately with supervisors, coworkers, and the public (Tr. 466) and Dr. Haus found Plaintiff capable of simple work allowing for occasional contact with others.  (Tr. 93). These opinions provide support for the ALJ's finding that Plaintiff could occasionally interact with coworkers and the public. *See Ward v. Comm'r of Soc. Sec.*, No. 18-CV-1317-FPG, 2020 WL 3035850, at *3 (W.D.N.Y. June 5, 2020) ("To the contrary, many courts have found that where, as here, an ALJ properly gave considerable weight to a medical opinion stating a claimant's ability to handle brief and superficial contact, an RFC containing a limitation to 'occasional interaction' is supported by substantial evidence.") (collecting cases); *George v. Comm'r of Soc. Sec.*, No. 19-CV-0812, 2020 WL 5913423, at *7 (W.D.N.Y. Oct. 6, 2020) ("[T]here is significant case law within the Second Circuit finding an RFC for simple routine work is not inherently inconsistent with limitations in the plaintiff's ability to deal with ... areas of mental

functioning, particularly where the source who provided such limitations ultimately opined the plaintiff is capable of performing simple, routine, repetitive work.").

To the extent the ALJ found Plaintiff somewhat more limited – by finding she could never interact with the public – Plaintiff is incorrect that this distinction creates a legal error: the RFC finding is *more* restrictive, giving the benefit of the doubt to Plaintiff's subjective allegations. *See Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." (internal quotation marks and citations omitted)). The fact that the ALJ was generous to Plaintiff in assessing the RFC in this case does not mean he believed Plaintiff had more than moderate limitations. *Cf. Lynneesa M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00971 EAW, 2021 WL 4437184, at *5 (W.D.N.Y. Sept. 28, 2021) (rejecting argument that the RFC for occasional, superficial interaction with supervisors and coworkers and no interaction with the public was inconsistent with moderate limitations in interacting and relating with others: "In other words, this is not a case with an unexplained inconsistency between the ALJ's step three finding and her RFC analysis; it is a case in which the ALJ, in fashioning the RFC, exercised her discretion to assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony. This does not constitute reversible error.").

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 11) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:        September 10, 2024
              Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge

- 18 -